Good morning. My name is David Schlesinger. I represent the appellant, Elza Budagova. During a motions hearing before the District Court on October 17, 2014, Judge Dean Pragerson, who at that point had served a little bit more than 18 years as a District Judge, characterized the government's Brady and Giglio-related misconduct as among the two worst instances of that sort that he had ever seen in his career as a District Judge. In his own words, and this appears at E.R. 1847, these were really bad Brady violations. And in the companion case that this Court decided recently, United States v. Garrison, the opinion characterized the government's misconduct, this appears at page 1061, as, quote, grave mistakes. But at the same time, in Garrison, the Court did not grant relief, correct? It did not grant relief on two appellate theories, Your Honor. First being that the District Court had erred in not using its supervisory authority to dismiss the second superseding indictment. The second being that it did not grant, that it erred by not granting Mr. Garrison's in-trial motion for mistrial. So the central disagreement that the government and I currently have, my opponent and I currently have, is whether Garrison's characterizing Mr. Garrison's request for a mistrial, does that encompass any Rule 33 theories that we're asserting in this appeal? What theory are you asserting that is different than Garrison? Our theory, Your Honor, is that the District Court erred post-trial in denying Ms. Budigova's Rule 33 theory, namely that there had been, under the longstanding Rule 33 standards, that there had been a serious miscarriage of justice resulting from the combination of the admitted fraud on the court that Bernard Harris, Julie Szyszalowski, and Dr. Eleanor Santiago had perpetrated coincidentally, perhaps not so coincidentally, on that same District Judge, Judge Pergerson, and then combining that fraud on the court with related, giglio-related misconduct, namely the failure by the government to disclose in a DA Form 6 related to an interview that the government had conducted with Ms. Szyszalowski in April 2014, that Form 6 did not fully disclose Szyszalowski's role in having perpetrated a fraud on the court. So that's the central theory that we have. But the standard of review will be the same. It will be an abuse of discretion. And the trial court gave a curative instruction, allowed, and the witnesses were cross-examined, and the entire matter was presented to the jury, and the Garrison panel found that to be appropriate, and there was no prejudice. So how is that different than this case? It's different from this case, Your Honor, in terms of how we're characterizing the theory. But the court's holding, even if it doesn't preclude your argument because it's slightly different than the co-defendant's argument was, the point of Garrison was that the curative instruction was sufficient to cure the prejudice that would otherwise potentially have occurred. So why doesn't that ruling mean that your argument meets the same fate? And I understand this court's conundrum, Your Honor, in terms of the law of the case doctrine and what Garrison has already addressed. I do respectfully, Your Honor, think that our theory is slightly different in that we are kind of pursuing a hybrid theory that the fraud in the court plus the related giglio misconduct associated with it, not adequately disclosing it months in advance of the trial, created the prejudice. Now, as we've acknowledged in our reply brief, in a footnote, if the court does deem Garrison to be sufficiently expansive such that it encompasses holdings regarding supervisory authority, mistrial motions, and Rule 33 motions, we would reluctantly have to acknowledge that it does preclude. Even if it's not preclusive, I guess my point is that it does contain a holding about prejudice and the absence of prejudice because of the curative instruction. And even if the argument that you're making is slightly different, it seems to me that that's, if not the law of the case, it's the law of the circuit. It gets put in other ways. What wriggle room do we have to roll in your favor after Garrison? I think there is a slight opening, Your Honor, and that is simply by addressing the hybrid theory that I've propounded in our briefs and here today. The standard review would be the same, the abuse of discretion. In other words, even under your theory, if Garrison had never happened, we still would review it for abuse of discretion. And the district court had the discretion of cure Giglio and Brady violations, and it did so. And where would the prejudice be? Well, I do agree, Your Honor, that it would be an abuse of discretion standard that's longstanding in this Court's case under Rule 33. I should note that regarding prejudice, Your Honor, the district court had essentially shot down the government's attempt to argue that the error was harmless because of the robust opportunity to cross-examine Shisholofsky and Santiago. He essentially determined, however, that there was sufficient evidence independent of Shisholofsky's and Dr. Santiago's and Harris's testimonies to support having the case go to a verdict against Garrison and against Ms. Budigova. That's where we argue that the error occurred, Your Honor, that under longstanding Brady and Giglio precedent, the touchstone should have been whether there was a fair trial, whether there was sufficient confidence in the outcome of the trial following these Brady and Giglio violations such that the case, again, we acknowledge that the dismissal theory has been precluded by Garrison, but in our theory, whether there was a sufficiently fair trial such that Rule 33 would apply. I notice that my time is somewhat limited. I would like to reserve the remainder of time for my rebuttal. If Ms. Aul has a chance to address our evidentiary hearing issue, I will address it during my rebuttal. You may do that. Thank you. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court. Ashley Aul for the United States. We take the late disclosure of Brady material extremely seriously, and I'm here to represent the government because we take it seriously. However, the district court in this case had ample opportunity to consider the effect of those late disclosures in the context of this trial and ruled appropriately that it was adequate to provide a curative instruction, pardon me, an instruction to the jury, both in the middle of Krzyzewalski's testimony and at the end of trial. This Court has already analyzed these claims in the context of Garrison, and even if it's not entirely preclusive, certainly Garrison's analysis does have weight here, both with respect to the analysis of prejudice, and I would submit to the analysis of, more broadly, whether the district court abused its discretion in this case. And the government's position is that the court did not. The distinction that has been drawn by defendant now with respect to Rule 33, I submit, is too narrow. Garrison also raised a new trial motion. If the Court looks at ER 1480, which is Budigova's new trial motion, it simply incorporated her mistrial and Rule 29 motion in a single paragraph. It had no new arguments in support of a Rule 33 motion post-trial. Garrison's and Budigova's new trial motions were heard together, they were ruled on together, and so I would submit that that is too thin a read on which to support a distinction between the outcome of Garrison's appeal and the outcome of defendant's appeal in this case. In his reply brief, pardon me, in her reply brief, defendant has also argued that the district court applied the wrong standard, and that's simply not true. In the context of late disclosed Brady or Giglio information, the question is whether the district court abused its discretion in selecting a remedy. In the context in which that is before the jury, the Court doesn't need to do the Kyle's analysis of what hypothetically would have been the effect of suppressed evidence on the jury, because of course the evidence was before the jury. And so there's not what the standard is the defendant is relying on is the materiality standard. We're not contesting that this should have been disclosed, but the question now is whether or not the district court abused its discretion in its ruling that that could be cured in the context of this trial where it was before the jury. And so for that reason, I would submit that the district court did not abuse its discretion in this case. If the Court has no further questions, I'll transition to the coercion issue. Sotomayor, I don't believe so. Go ahead. No question. In the context of defendant's statements to officers, there's simply one was not a record to support an evidentiary hearing. Defendant was given an opportunity to create a material issue of fact. At ER 8, the district court invited her to create, to get on the stand and to create a material issue of fact, but she did not. In her own paper, she relied upon the recording of the interview, which was before the court and is before this Court. She relied upon officers' reports about that interview, which are also before this  And then she relied upon her own declaration that I'm, of course, summarizing, but indicated that she was confused, in part because of language barrier. And it was simply correct that that is not adequate, even assuming the truth of her declaration, to support suppression of her statements. Moreover, in this case, there's obviously no causal connection between anything that Agent Tran said to the defendant and anything that the defendant actually said. The defendant said the same, repeated the same lies, both before and after, the July 11th interview, pardon me, July 18th interview. When she was interviewed, when the clinic was searched in September, she said that she was just a volunteer, that she helped the doctor, that's at GER 2. And then in a proffer after this interview, when she had a Russian interpreter, when she was lengthily advised of her Miranda and other rights, she again repeated the same lies. Which just indicates that nothing that the agents did in the course of the at-home interview coerced anything at all. The defendant acted voluntarily and made the statements that she made. And if the Court has no further questions, the government will submit. Sotomayor, I think we don't. Thank you. Thank you. Ms. Schlesinger, you have some rebuttal time? Certainly, I would welcome any questions the Court would have regarding the Brady-Giglio issue. But otherwise, I will try to concentrate my rebuttal time on the evidentiary hearing issue. I would note that the second interview that Ms. Ahl referenced was not admitted as evidence as trial first. And second, Ms. Ahl did note that Ms. Budigova was provided with an interpreter at that second interview. So the circumstances were different. It's unfortunately notable that Ms. Ahl is characterizing the misstatements as having been the same. But nevertheless, the government didn't seek to admit those at trial. Whereas it did seek to admit the statements made on July 19, 2011. It actually did admit them at trial from the July 19, 2011 interview. And at that interview, Ms. Budigova did not have a formal interpreter. But was there anything incriminating about anything that she said? She said to me that in a sense, it allowed the defendant to present her theory of the case by explaining what she thought her role was at this institution. So how was she prejudiced by that? It's arguably incriminating, Your Honor, in the sense that the government claimed that she had lied about her role at the clinic, that she was merely a volunteer, that she was merely transcribing doctors' notations as opposed to performing her own independent medical judgments based on her experience. Wasn't that her theory of their defense? It was a theory of defense that she was merely an interpreter at the clinic and was not engaged in the overall overarching fraudulent scheme. I would note just before I wrap up my rebuttal, Your Honor, that her statements being admitted at trial were particularly significant given that the government, in its closing argument, didn't in any way reference the testimony of Ms. Fischelowski or Dr. Santiago. And, indeed, in its rebuttal argument, it invited the jury just to consider all evidence against Ms. Budigova independent of what those two witnesses had testified to. So in that light, her statements admitted in evidence became more significant. I see that my time has expired. If there are no further questions, I'd be pleased to submit. I don't believe there are. Thank you very much. Thank you, Your Honor. The case just argued is submitted, and we appreciate the helpful arguments from both counsel.
judges: Wardlaw, Graber, Robreno